ARTHUR W. CARMICHAEL, PLAINTIFF IN ERROR, V. JOHN C. DOLEN, DEFENDANT IN ERROR.

1. **Injuries to Person:** PETITION: STATING CAUSE OF ACTION: AMENDMENT. A brought an action against B, in May, 1884, in which he alleged that on or about the 29th day of October, 1883, the "defendant unlawfully made an assault upon the plaintiff, and him, the said plaintiff, did then and there beat and ill-treat by striking and by shooting in the abdomen, so that he has been unable to attend to his lawful business," etc. Summons was not served until December, 1884. Afterwards an amended petition was filed, in which it was alleged that, the "defendant being somewhat under the influence of liquor, which the defendant had knowingly and intentionally drank, took from his pocket a pistol or revolver, in disregard of the lives and safety of lives in said saloon, flourished and displayed the same in a negligent and careless manner, * * * and negligently and carelessly discharged said pistol or revolver while the same was pointed at this plaintiff, and thereby the plaintiff was wounded and shot through the body, without fault or negligence on his part," etc. *Held,* That the cause of action—the shooting—being the identical charge in both cases, the amendment was properly allowed.

2. ——: DAMAGES. A person who unlawfully shoots another and wounds him, whether intentionally or through negligence, is liable for the damages thereby sustained by the party injured.

ERROR to the district court for Saline county. Tried below before BROADY, J.

*Dawes, Foss & Stephens (Thurston & Hall* with them), for plaintiff in error, cited: *McKeighan v. Hopkins,* 19 Neb., 33. Code, Sec. 13. Angell on Limitations, 6 Ed., Sec. 72. *Lamb v. Clark,* 5 Pickering, 193. 1 Thompson on Negligence, 45. Wharton on Negligence, 2 Ed., Sec. 73.

*Hastings & McGintie* and *Hazlett & Bates (L. W. Colby* with them), for defendant in error.

MAXWELL, J.

On the 3d day of May, 1884, the plaintiff filed a petition in the district court of Saline county against the defendant, to recover damages for unlawfully assaulting the plaintiff, "and him, the said plaintiff, did then and there beat and ill-treat by striking and by shooting in the abdomen, so that he has been unable to attend his lawful business since said 20th day of October, 1883, and other wrongs then and there committed upon him, the said plaintiff, whereby he was made to suffer great pain, both in body and mind, to the damage of the plaintiff to the amount of $10,000.

"2d. Plaintiff complains of the defendant for that said plaintiff was compelled to expend, and has expended and paid out, the sum of $850 in and about nursing the said plaintiff, and in endeavoring to be cured of the said wounds as aforesaid occasioned, to the damage of the plaintiff to the sum of $10,000."

The amount of damages claimed in the prayer is $10,000.

The summons first issued in this case was returned without being served, and an *alias* was issued, but not served within a year from the time the cause of action accrued, service not having been obtained until Dec. 27, 1884.

The defendant afterwards appeared and filed a motion to require the plaintiff to amend his petition by stating fully and specifically the items of expense for nursing, etc., incurred by the plaintiff in being cured of his injuries. Afterwards, and before a ruling on the motion, the defendant filed a general demurrer to the petition. The motion and demurrer were submitted together to the court, and both were overruled. In October, 1885, the plaintiff asked and obtained leave to file an amended petition. No objection seems to have been made by the defendant to this order.

The amended petition is as follows:

"That on the 29th day of October, 1883, the defendant, at DeWitt, Saline county, and state of Nebraska, and on the evening of said day, in a saloon kept by one Charles B. Bailey, being somewhat under the influence of liquor, which the defendant had knowingly and intentionally drank, took from his pocket a pistol, or revolver, and in disregard of the lives and safety of the persons then in said saloon, flourished and displayed the same in a negligent and careless manner; that this plaintiff was at said time a peace officer, and was present in said saloon as such, by the request of the proprietor of the same, to prevent disorder and preserve the peace; that when the defendant so drew and flourished his said pistol or revolver this plaintiff started towards him, for the purpose of inducing him to replace the same in his pocket; that while so advancing the defendant negligently and carelessly discharged said pistol or revolver while the same was pointed at this plaintiff, and thereby the plaintiff was wounded and shot through the body, without any fault or negligence on his part; that said wound and injury was caused wholly by the negligence and carelessness of said defendant in handling his said pistol or revolver; that the plaintiff was thereby dangerously wounded and diseased, and was confined to his bed for about the period of three months; that he has suffered great bodily and mental pain and agony; that he has been thereby permanently disabled, and made a cripple for life; that prior to said injury he was a strong and able-bodied man, and able to provide for himself and family; that by reason of said injury he has become permanently crippled and disabled, and unfitted to perform any ordinary manual labor; that in the treatment and necessary care and attention of said wound, and of himself while suffering from the effect of the same, he has expended large sums of money, and incurred liabilities for physicians' services, medicines, and nursing, and other services of a like

character, in the sum of $850 ; that he has been injured in the premises in the sum of $10,000."

The defendant filed a motion to strike this petition from the files, for the reason that the cause of action was not the same as that set forth in the original petition. The motion was overruled, to which the defendant excepted, and now assigns the same for error.

The defendant, in his answer, pleads—1st, self-defense; 2d, that he is a resident of Gage county; and 3d, denies the facts stated in the petition. On the trial of the cause the jury returned a verdict in favor of the plaintiff for the sum of $2,000, and made certain special findings, which are not material to be considered. The defendant filed a motion for judgment, notwithstanding the verdict. This motion the court sustained, and dismissed the action, upon the ground that the cause of action was barred when the suit was brought.

The first question to be considered is the action of the court in overruling the defendant's motion to strike the amended petition from the files. The question here presented was before this court in *McKeighan v. Hopkins*, 19 Neb., 33, and it was held that where the amendment does not change substantially the *claim*, although the form of the action may be changed, the court has power to grant the amendment. In other words, so long as the identity of the cause of action is preserved, the form of the action is not material. *Spice v. Steinruck*, 14 O. S., 213. *Lottman v. Barnett*, 62 Mo., 159. *Hayden v. Hayden*, 46 Cal., 332. *Bullard v. Johnson*, 65 N. C., 436. *Robinson v. Willoughby*, 67 Id., 84. Maxwell's Pl. and Pr. (4th Ed.), 174–175. The cause of action set forth in the first petition is, the injury inflicted on the plaintiff by the defendant by shooting him, and this is the cause of action set forth in the amended petition. The change in the allegations relate only to the mode in which the injury was inflicted. There was no error, therefore, in overruling the motion to strike the amended petition from the files.

It is very probable, also; that an injury resulting from wounds intentionally inflicted by a deadly weapon do not come within the limitation as simply "assault and battery." But that question is not before the court. The character of the injuries inflicted on the plaintiff are shown to have been very severe and permanent in their nature, and would have justified the jury in returning a verdict for a much greater sum than was done in this case, he having been shot through the body, and it is apparent that his life was preserved only by the utmost care and skill.

The defendant himself testifies as to the mode in which the shooting was done, as follows:

Q. You may state if you were in the saloon of Mr. Bailey, that night in DeWitt?

A. Yes, sir.

Q. You may state if you saw Mr. Yule there that day?

A. I did.

Q. What had you been doing that day?

A. Mr. Yule and I came from Beatrice to Wilber that afternoon, and we had started to Mr. Jo. Ellises, and we heard that he was in DeWitt, and we went there to meet him. I had some business there.

Q. Go on and tell what happened there that day?

A. Mr. Yule and I went into DeWitt about 4 o'clock, or about that time, and went to the stable and put up our team; and I think I struck Mr. Bailey on the street, and I asked him if Jo. Ellis was in town, and he said he was; and Mr. Yule went to the hotel, and Mr. Bailey and I went off and had a talk somewhere, and finally Mr. Yule and Mr. Bailey and Mr. Ellis—I am not positive about Mr. Yule—Mr. Bailey, Mr. Ellis, and myself, went back to the saloon again, and then on the sidewalk between the post-office and Mr. Bailey's saloon, and Mr. Yule told about some threats that he had heard.

Q. What was it he told you?

A.    He told me they was fixing up a plot to kill me and pay me up, and he says, "Oh, this is all settled," and Mr. Carmichael and the man Brown, he calls his deputy, came in and they went in, back to the stove or near the stove, I am not positive where they did go, and the Dr., Elder, and List came in, and Elder stood back, near the door, and Charley said, " Ed, have a cigar," and I think he lit it, and walked towards me and says, "John, how is politics in Gage county?" and I says, "I don't know. All right, I hope," and I saw him make a move, and he says, "You son of a bitch, I will give it to you now." He had something in his hand, I don't know, just then I had my pistol in my right-hand pocket, and I think I had my hand on my pistol, and I drew it out and fired right over my left shoulder, and I suppose hit him, and I had not done that till some one else was pounding me over the head with a club; I suppose I shot as long as there was any loads in the gun, and when I came to, I saw Carmichael had me down on the floor, and I says, "My God, Bill, what have you got me down here for?" and I was still pulling away.

Q.    After this blow was hit you by Mr. List, have you any distinct recollection of the transaction?

A.    That is the first thing that I distinctly remember, was when he had me on the floor. That was the first time I really knew what I was doing, when they went to take me out of the door; I wiped the blood off my forehead, and still had my revolver in my right hand; and List was lying on the floor, and I saw Carmichael pull up his coat, and says you have shot me.

Q.    After you fired the first shot, did you receive another blow?

A.    The blows all came as though they were coming from that one man.

Q.    When you shot, you shot to hit the man that was pounding you?

A.    Yes, sir.

Q. At that time what was your condition, as to being under the influence of liquor, or not?

A. I was not under the influence of liquor, I had taken about three glasses of beer after I came to DeWitt, I think I had taken that many, etc.

There is a large amount of testimony to the same effect.

A person who unlawfully, whether by design or through carelessness, shoots another and wounds him, is liable in a civil action for the damages sustained. The testimony in this case shows that there were a number of persons in the saloon at the time the plaintiff was injured, yet the defendant, in utter disregard of the injuries he might inflict upon such persons, swears that he fired his pistol over his shoulder, and that while thus firing the plaintiff was wounded by one of the shots. All the testimony tends to show that the shooting was in violation of law, and not in necessary self-defense. The defendant is liable, therefore, for all the damages any party injured sustained by his conduct. In a law abiding state like this, there is no excuse for a party carrying concealed weapons. The law prohibits the carrying of such, and if a party in violation thereof carry the same, and unlawfully use them, to the injury of another, he may expect to respond in damages to the party injured. The amount assessed by the jury in this case is low, considering the character of the injuries proved, but the adequacy or inadequacy of the amount is not now before the court.

The court erred in sustaining the motion to disregard the verdict and render a judgment for the defendant.

The judgment of the district court is reversed, and the cause remanded to the district court, with directions to reinstate the case and render judgment on the verdict in favor of the plaintiff, and for such other and further proceedings as may be just in the case.

JUDGMENT ACCORDINGLY.

THE other judges concur.